UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-cv-00037-FL

**Larry M. Combs**,

    Plaintiff,

v.

**Sirius XM Radio, Inc.**,

    Defendant.

**Memorandum & Recommendation**

  On February 17, 2015, Plaintiff Larry M. Combs filed a complaint alleging that Defendant Sirius XM Radio, Inc. ("Sirius XM") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. Sirius XM replied by filing a Motion to Dismiss and Compel Compliance with Dispute Resolution Procedures in the Parties' Customer Agreement ("Motion to Dismiss and Compel Compliance with Dispute Resolution Procedures") on May 11, 2015. As the title of its motion implies, Sirius XM argues that the dispute is governed by the dispute resolution procedures described in its customer agreement. The customer agreement requires the parties to submit claims to an informal resolution process and, if that is unsuccessful, arbitration. Combs asserts that his claims are litigable because Sirius XM's alleged actions occurred after the termination of the contract containing the dispute resolution procedures.

  After reviewing the docket and the arguments of the parties, it appears that Sirius XM is entitled to the relief it seeks because the dispute resolution provisions provide that the parties intended to submit questions of arbitrability to arbitration, not to the courts. However, the court determines that a stay of this matter pending arbitration is more appropriate than a dismissal.

Therefore, the undersigned recommends[1] that the court grant in part and deny in part Sirius XM's Motion to Dismiss and Compel Compliance with Dispute Resolution Procedures (D.E. 7) and stay this matter pending the outcome of arbitration.

I.   **Background**

In February 2013, Combs purchased a Ford F-150 truck that came with a free six-month trial subscription to Sirius XM radio. Ruhland Decl. ¶ 18, D.E. 13. On September 10, 2013, after the Sirius XM radio trial ended, Combs purchased a one-year automatically-renewable subscription to the service. *Id.* at ¶ 24. During that transaction, a Sirius XM agent told Combs that his subscription was governed by the Customer Agreement. *Id.* at ¶ 25. A copy of the Customer Agreement was later mailed to Combs. *Id.*

The Customer Agreement, which governed the rights and obligations of Combs and Sirius XM, contained dispute resolution provisions ("Dispute Resolution Provisions"). Exh. A at 6, ¶ I, D.E. 13-1. The Dispute Resolution Provisions provided that "any legal or equitable claim relating to … [the] Subscription or this Agreement (a 'Claim')" must first be submitted to an informal claim resolution process. *Id.* If the parties could not

> resolve a Claim informally, including any claim between [them], whether related to [the Customer] Agreement or otherwise, including past, present, and future Claims and disputes, and including any dispute as to the validity or applicability of this arbitration clause, then [the] Claim [must] be resolved, upon election by either party, exclusively and finally by binding arbitration.

*Id.* at 6, ¶ I.2. The Dispute Resolution Provisions also provided that "[t]he party initiating arbitration must follow the rules and procedures of the American Arbitration Association ("AAA") in effect at the time the Claim is filed, and the parties agree that the arbitration shall be administered by the AAA." *Id.*

---

[1] The district court referred this matter to the undersigned United States Magistrate Judge for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1).

Combs cancelled his automatically-renewable subscription before the 2014 renewal date (Combs Decl. ¶ 5, D.E. 15-1) and Sirius XM cancelled the account for non-payment on October 22, 2014 (Ruhland Decl. ¶ 27, D.E. 13). Combs alleges that Sirius XM violated the Telephone Consumer Protection Act by repeatedly calling him to persuade him to renew his subscription. Compl. ¶ 11, D.E. 1. He contends that the calls took place from October 2014 to November 2014, and that he revoked his consent to such calls in late October 2014. *Id.* at ¶¶ 8, 9; Combs Decl. ¶ 10, D.E. 15-1.

## II. Standard of Review

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et. seq.*, a written provision requiring arbitration of a dispute arising from a contract involving commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The parties do not dispute that the contract at issue involves commerce and that the FAA applies.

When deciding a motion to compel arbitration brought under the FAA, courts apply a standard that is similar to a motion for summary judgment. *Erichsen v. RBC Capital Mkts., LLC*, 883 F. Supp. 2d 562, 566 (E.D.N.C. 2012). "Accordingly, arbitration should be compelled where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 566–67 (quoting Fed. R. Civ. P. 56(a)). The party seeking to compel arbitration bears the burden of demonstrating the absence of genuine issues of material fact. *Id.* at 567. The burden then shifts to the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Erichsen*, 883 F. Supp. 2d at 566.

**III.    Analysis**

Sirius XM argues that it is entitled to an Order dismissing this action and compelling Combs to follow the dispute resolution process because Combs's claims fall within the scope of the Dispute Resolution Provisions. Def. Mem. in Supp. at 10, D.E. 8; Def. Reply Mem. at 6–7, D.E. 16. Combs asserts that he is entitled to litigate his claims because the parties terminated the Customer Agreement and Sirius XM's alleged actions took place after the termination. Pl. Mem. in Opp. at 8, D.E. 15. The court determines that the parties should be ordered to comply with the dispute resolution process outlined in the Customer Agreement and that this action should be stayed while they do so.

The parties do not contest that the Dispute Resolution Provisions were part of a valid contract. Def. Mem. in Supp. at 8–9, D.E. 8; Pl. Mem. in Opp. at 4, D.E. 15. What is in contention, however, is the applicability of the Dispute Resolution Provisions and, specifically, whether the duty to follow the dispute resolution process terminated when the parties terminated the Customer Agreement. Courts apply a two-step inquiry when deciding whether a dispute is arbitrable. *Peabody Holdings Co. v. United Mine Workers of Am.*, 665 F.3d 96, 101 (4th Cir. 2012). First, the court must "determine who decides whether a particular dispute is arbitrable: the arbitrator or the court." *Id.* (emphasis omitted). "Second, if [the court] conclude[s] that the court is the proper forum in which to adjudicate arbitrability, [it] must then decide whether the dispute is, in fact, arbitrable." *Id.* (emphasis omitted).

Courts, not arbitrators, generally determine who decides the question of arbitrability. *AT&T Techs.*, *Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986). However, parties may contract to allow arbitrators to determine arbitrability by "clearly and unmistakably" providing so in the arbitration clause. *Id.* Parties "who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes

4

under this contract are hereby committed to arbitration,' or words to that clear effect." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330–31 (4th Cir. 1999).

Although the Fourth Circuit has not decided the issue, numerous other courts have found that the incorporation of the AAA Rules into an arbitration clause constitutes clear and unmistakable evidence of the parties' intent to allow an arbitrator to decide arbitrability. *See Burton's Pharmacy, Inc. v. CVS Caremark Corp.*, No. 1:11-CV-2, 2015 WL 5430354, at *7–8 (M.D.N.C. Sept. 15, 2015); *see also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 880 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1374 (Fed. Cir. 2006); *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2nd Cir. 2005); *Terminix Internat'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005). *But see Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011) ("[E]ven where parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to the parties' arbitration agreement, this delegation applies only to claims that are at least arguably covered by the agreement." (emphasis removed)); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 777 & n.1, 780 (10th Cir. 1998) (determining that the inclusion of the AAA Rules in an arbitration clause did not constitute "clear and unmistakable evidence" of the parties' intent).

Combs and Sirius XM agreed to allow an arbitrator determine the scope of the Dispute Resolution Provisions. The Formal Resolution paragraph of the Dispute Resolution Provisions manifests this intent as it states: "[i]f we cannot resolve a Claim informally … including any dispute as to *the validity or applicability* of this arbitration clause, then these Claims shall be resolved, upon election by either party, exclusively and finally by binding arbitration." Exh. A at 6, ¶ I.2, D.E. 13-1 (emphasis added). This wording is similar to the suggested wording in

5

*Carson*: "all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration." *Carson*, 175 F.3d at 330–31; *Int'l Union v. Dallas Airmotive*, No. 3:14-cv-5035-MDH, 2015 WL 196300, at *4 (W.D. Mo. Jan. 15, 2015) (citing cases involving similar language). Additionally, the Dispute Resolution Provisions explicitly adopt the AAA Rules. Exh. A at 6, ¶ I.2, D.E. 13-1 ("The party initiating arbitration must follow the rules and procedures of the American Arbitration Association ("AAA") … and agree that the arbitration shall be administered by the AAA."). Accordingly, an arbitrator—not the court—must determine whether Combs's claim is subject to arbitration.

Combs argues that he cannot be required to arbitrate because the underlying agreement expired. However, Combs's assertion that the arbitration clause expires with the contract is incorrect—the law creates a presumption that the arbitration clause survives the underlying contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[A]n arbitration provision is severable from the remainder of the contract …. [and] unless the challenge is to the arbitration clause itself, the issue of a contract's validity is considered by the arbitrator in the first instance."); *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205 (1991) ("[I]f a dispute arises under the contract … it is subject to arbitration even in the postcontract period."); *Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 252–53 (1977) (noting that when "there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination …. there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract"). Combs has not rebutted this presumption. Therefore, the court should compel compliance with the Dispute Resolution Provisions.

Next, the court must determine whether this action should be dismissed or stayed while the parties comply with the Dispute Resolution Procedures. The Fourth Circuit has not conclusively determined whether a dismissal for lack of subject matter jurisdiction or a stay is proper when a dispute is subject to an arbitration agreement. *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) ("There may be some tension between our decision in *Hooters*—indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and *Choice Hotels*—sanctioning dismissal 'when all of the issues presented … are arbitrable.'"); *Holden v. Raleigh Rest. Concepts, Inc.*, No. 5:14-CV-348-F, 2014 WL 6609774, at *4 (E.D.N.C. Nov. 20, 2014) (noting that the Fourth Circuit has not conclusively decided whether a dismissal or a stay is appropriate and staying the case pending arbitration); *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 2:12-CV-47, 2012 WL 2878495, at *7–9 (E.D. Va. July 13, 2012) (outlining conflicting Fourth Circuit precedent). Sirius XM has failed to demonstrate why the arbitration clause deprives the court of subject matter jurisdiction, *see Holden*, 2014 WL 660974, at *4; *see also DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 76 (1st Cir. 2000) ("Agreements to arbitrate are now typically viewed as contractual arrangements for resolving disputes rather than as an appropriation of a court's jurisdiction."), and Section 3 of the FAA clearly allows the court to stay an action pending arbitration, 9 U.S.C. § 3 ("[T]he court … upon being satisfied that the issue involved … is referable to arbitration … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…."); *see also Harvey v. Darden Rest., Inc.*, No. 1:14-CV-258, 2015 WL 1474946, at *3 (M.D.N.C. Mar. 31, 2015); *Holden*, 2014 WL 6609774, at *4. Accordingly, the undersigned magistrate recommends that the court stay this action pending the outcome of the Dispute Resolution Procedures.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that the court grant in part and deny in part Sirius XM's Motion to Dismiss and Compel Compliance with Dispute Resolution Procedures and stay this matter pending the outcome of arbitration (D.E. 7).

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: January 7, 2016

_____
R<span></span>OBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE